UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------X
UNITED STATES OF AMERICA,

                              91 CR 800 (SJ)

      v.

                              <u>MEMORANDUM</u>
                              <u>AND ORDER</u>

ANTHONY VIOLA,

          Defendant.
-----------------------------------------------------X
APPEARANCES

JACQUELINE KASULIS
Acting United States Attorney
Eastern District of New York
271 Cadman Plaza East
Brooklyn, NY 11201
By: Anna Karamigos
*Attorney for the Government*

AARON GOLDSMITH
225 Broadway
Suite 715
New York, NY 10007
*Attorney for the defendant*

JOHNSON, Senior District Judge:

      Defendant Anthony Viola ("Defendant" or "Viola") moves this court

(1) for a modification of sentence in light of Amendment 782 to the United

1

P-049

States Sentencing Guidelines ("USSG" or the "Guidelines"); and (2) to grant him compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) ("Section 3582(c)") and the First Step Act of 2018, Pub. L. 115-391, 132 Stat. 5194. Based on the parties' submissions and the oral argument held on June 2, 2021, and for the reasons stated below, Viola's s motion is GRANTED IN PART AND DENIED IN PART.

I. Background

This facts and circumstances surrounding this action, as well as the underlying related civil actions, are more fully set forth in the Court's September 29, 2004; March 7, 2006; August 17, 2009; and March 10, 2011 orders, and are incorporated by reference herein. Familiarity therewith is assumed.

Briefly, Defendant Anthony Viola, ("Defendant" or "Viola"), has been in custody since July 23, 1991. He was convicted at trial of 25 of the 28 racketeering offenses charged against him. These convictions result from Viola's extensive participation in a criminal drug enterprise responsible for importing over 70,000 kilograms of marijuana and over 300 kilograms of cocaine. Through connections at various ports in and around the New York City metropolitan area, he was also able to receive a substantial amount of stolen goods from shipping containers. In so doing, he employed

2

subordinates to assist in intercepting the containers, which contained, in addition to marijuana and cocaine, bulk items including, *inter alia,* beer, lamps, tobacco products, and large quantities of spices. He also directed co-defendant, Gaetano Izzo, to destroy evidence, to wit: at least 15 kilograms of sham cocaine placed in a container by United States Customs that Viola believed to be bricks of real cocaine. (Dkt. No. 648 ("PSR") ¶ 68.) Given the breadth of the offenses, it bears noting that Viola was a leader of the enterprise.

At sentencing, Viola's total offense level was 44, one level higher than the highest level contemplated by the Guidelines. Therefore, the Court applied the guidelines applicable to a total offense level of 43. On April 8, 1993, the Court sentenced Viola to a term of life imprisonment on Counts 1-6, 17, 19, 20 and 29 (for the racketeering and drug charges), 120 months on Counts 12-18 (for the receipt of stolen goods felonies), to be served concurrent to the life terms, and 60 months on Counts 7-9, and 11-15, as a group, to be served consecutively. (Dkt. No. 344.) At the time of sentencing, the Court was bound by the Guidelines of life, as well as the mandatory consecutive running of the 60-month sentence for the firearm-related counts under § 924(c).

On May 7, 2020, Viola was denied compassionate release by the Warden of the United States Penitentiary at Allenwood, Pennsylvania ("USP Allenwood"), who noted that Viola had "not been diagnosed with a terminal, incurable disease with a life expectancy of 18 months or less, [he is] able to care for [his] daily needs, and [he] is not confined to a wheelchair for greater than fifty percent of [his] waking hours." (Dkt. No. 642-1 at 3.) However, Viola, now 79 years old, updated the Court on personal and health-related matters that bear on his motion, including age, macular degeneration (including blindness in one eye), parenchyma (leakage of brain tissue), a history of prostate cancer and a prostatectomy, three joint replacements, the loss of two children during the 30 years he has been incarcerated and the fact that his wife has an inoperable brain tumor. These alleged conditions were then exacerbated by the COVID-19 pandemic.

Viola has presented evidence from his unit Recreational Specialist at USP Allenwood in support of his release under the First Step Act, citing his successful participation in various work programs, as well as letters from the community, including a letter from a retired New York City Police Detective, attesting to his rehabilitation. (Dkt. Nos. 640, 642.)

On June 2, 2021, the parties appeared before this Court for oral argument. (*See* Dkt. No. 654.) The parties agreed that, pursuant to § 3582(c) and

Amendment 782 to the Guidelines, Viola is entitled to a limited resentencing due to a change in policy on certain drug convictions. *See Koons v. United States*, 138 S.Ct. 1783, 1788 (2000); *Lopez v. United States*, No. 10 CR 798 (PAC), 2021 WL 2821149, at *2-3 (S.D.N.Y. Jul. 7, 2021). The parties also jointly argued that under *United States v. Brooker*, 976 F.3d 228 (2d Cir. 2020), and *United States v. Rose*, 837 F. App'x 72 (2d Cir. 2021) (summary order), the Court should impose a sentence in this case of time served. This Court agrees with the former, but not the latter.

II. **Discussion**

A. **Amendment 782**

"Under Section 3582(c)(2)...when a defendant has been sentenced to a term of imprisonment based on a sentencing range that is subsequently lowered by the Sentencing Commission, the Court may act upon motion of the defendant or the Director of the Bureaus of Prisons, or upon its own motion, to reduce the defendant's term of imprisonment." *United States v. Vargas*, 74 F. Supp. 3d 601, 603 (S.D.N.Y. 2015.); *see also Hughes v. United States*, 138 S.Ct. 1765, 1773 (2018) ("If an amendment applies retroactively, the Act authorizes district courts to reduce the sentences of prisoners who were

P-049

sentenced based on a Guidelines range that would have been lower had the amendment been in place when they were sentenced.");U.S.S.G. § 1B1.1.

As stated, *supra*, the government concedes that Amendment 782 to the Guidelines applies, entitling Viola to petition the Court for a two-point reduction, a resulting total offense level of 42, and a guideline range of 360 months to life. This Court agrees. *See United States v. Reed*, 7 F.4th 105, 109 (2d Cir. 2021) (acknowledging Amendment 782's retroactivity).

*Section 3553(a)*

Section 3582(c) involves a second step, at which the Court must re-balance the factors set forth in § 3553(a) in determining whether to grant the discretionary two-point reduction. *See United States v. Patterson*, No. 06-CR-0080, 2020 WL 3451542, at *1 (S.D.N.Y. Jun. 23, 2020); *United States v. Vega*, 89-CR-0229, 2020 WL 7060153, at *3 (E.D.N.Y. Dec. 2, 2020).

As discussed above, Viola's offenses were serious in that he moved an enormous quantity of drugs (70,000 kilograms) during the operation of his enterprise, obstructed justice in the process, and was a near-ubiquitous presence at shipping ports in and near this district, acquiring seemingly anything he could fence. And he did so in his forties.

P-049

However, the Court is cognizant that, given Viola's age and current family circumstances, he has in these thirty years been sufficiently deterred from future criminal conduct. *See* 18 U.S.C. 3553(a)(2)(B). Likewise, the Court finds that, at the exhaustion of this sentence, the public is unlikely to be at risk of being victimized again by Viola. *See* 18 U.S.C. 3553(a)(2)(C).

Accordingly, this Court grants Viola's motion pursuant to Amendment 782, and hereby resentences him to 360 months on Counts 1-6, 17, 19, 20 and 29, with the remaining terms of supervision to remain in effect.

B. Compassionate Release Under the First Step Act

Per the Second Circuit's ruling in *Brooker*, the First Step Act does not bind the district court to the provisions of U.S.S.G. § 1B1.13 in evaluating whether a particular application for compassionate release is "extraordinary and compelling." *Brooker*, 976 F.3d at 230; *id.* at 235-6 ("[T]hough motions by BOP still remain under the First Step Act, they are no longer exclusive, and we read the Guideline as surviving, but now applying only to those motions that the BOP has made."). Moreover, a defendant seeking relief under Section 3582(c)(1)(A) "bears the burden of showing that his release is justified." *See Patterson*, 2020 WL 3451542, at *1; *see also Vega*, 2020 WL 7060153, at *3 (same).

In *Brooker*, arising out of the District of Vermont, defendant ("Zullo") pleaded guilty to conspiring to traffic marijuana and more than five kilograms of cocaine; possessing a gun in furtherance of a drug crime; and using criminally derived property in a transaction valued at more than $10,000. *Id.* at 230. At the age of 22, he was sentenced to 121 months (one month more than were he to serve concurrent mandatory minimum sentences of five and ten years). *Id.* at 231. That sentence was imposed begrudgingly:

> [y]ou know, a sentence like this it's difficult for me to sentence somebody like you to 10 years in prison frankly. You know, I look back at the number of people I've sentenced to 10 years or more. Most of them have been pretty experienced criminals with a lot of past criminal behavior. So you are a little bit unique in that sense. So I'm not going to give you much more than the 120 months…because I don't, because I frankly think 120 months is long enough.

*Id.* at 230-1.

The government appealed and, while the appeal was *sub judice*, the Supreme Court issued a decision in *Abbott v. United States*, 562 U.S. 8, 131 S.Ct. 18 (2010), which made it clear that the court lacked discretion to impose Zullo's sentences concurrently. On remand, Zullo was again begrudgingly sentenced, this time to the full 15 years. *Brooker*, 976 F.3d at 231.

Zullo then, on July 19, 2019, filed a motion for compassionate release pursuant to the First Step Act, amending the motion to add the argument that the government violated his plea agreement. *Id.* at 234. The motions were denied by the district court, which was "relying on Guideline § 1B1.13." *Id.*

The *Brooker* court did not affirm the propriety of a sentence below the applicable minimum. No mention was made in the Court's discussion section of the mandatory minimum sentences imposed on the federal judiciary by Congress. Indeed, the Court limited its intended holding as follows: "We must today decide whether the First Step Act empowered district courts evaluating motions for compassionate release to consider *any* extraordinary and compelling reason for release that a defendant may raise, or [in the alternative], whether courts remain bound by [the Guidelines]." *Brooker*, 976 F.3d at 230 (emphasis in original).

Because Zullo's fifteen-year sentence is actually two mandatory minimum (one 10 and one 5-year) sentences served consecutively, the Circuit implicitly acknowledged, that, on remand and with the aims of § 3553(a) in mind, the district court might have chosen to issue a below-minimum sentence on one or both consecutive counts of conviction. But the *Brooker*

9

court, in omitting from the discussion any explicit mention of the mandatory nature of these sentences, stopped short of furnishing the district court with its explicit imprimatur to do so. Therefore, this Court does not read *Brooker* as requiring (much less suggesting) that the mandatory minimum sentences should be set aside in this case.

The parties also rely on the summary order in *Rose*, 837 F. App'x 72. There, the Second Circuit affirmed the district court's denial of a motion to reduce Rose's sentence under the First Step Act. The Circuit Court noted the district court's "concern" that Rose's 90-year sentence for a series of armed bank robberies that he committed at the age of 20 was "too long." The Circuit, anticipating a renewed defense motion at the district court level,[1] stated that the district court "*may*," on reconsideration, "look to, but is not bound by, the mandatory minimums that the defendant would face if being sentenced for the first time under revised guidelines or statutes." *Id.* at 73-4 (emphasis added).

The district court did just that. Rose renewed his motion in light of *Brooker* and, in balancing the § 3553(a) factors, the court found that though Rose's case was a "close call," his young age at the time of the offenses, his

---

[1] The district court denied Rose's motion "without prejudice."

10

"extensive rehabilitation efforts" and "commendable" conduct during incarceration collectively rendered him a new person in the court's view. *United States v. Rose*, No. 04 CR 67, Dkt. No. 282. at 6-7 (N.D.N.Y. Jul. 22, 2021).

However, under 3553(a), the same cannot be said of Viola. Indeed, the sentencing court in *Rose*, much like in *Brooker*, was reluctant to hand down his sentence:

> The Court disagrees with the government that this is the appropriate sentence. I have to sentence you as the law is written and as I understand the law to be. In my opinion the sentence is much too long, but I have no right to follow my own opinion. I must follow and interpret the law to impose upon you the sentence that is appropriate under the law. So that's what I'm going to do, although it is not something that I want to do. I think a far lesser sentence would give you a chance to come out into the community after spending a good long time in prison. Probably would be a sentence that I would personally feel way more appropriate, but it's not my call.

*Rose*, No. 04 CR 67, Tr. of Sentencing (N.D.N.Y. Aug. 23, 2021). No such argument has been made by Viola.

The extraordinary and compelling circumstances underlying these district court decisions are fairly uniform: a defendant whose crimes were committed at a young age; a sentencing court reluctant from the onset to impose the mandatory sentences; some showing of rehabilitation on the part

11

P-049

of the defendant; the Circuit's invitation to "consider" what the defendant's sentence would have been but for the mandatory minimums or other changes brought about by the First Step Act; and the presence of 924(c) "stacking." *See id.* (identifying, *inter alia*, the defendant's youth at the time of the offenses, the stacking of his firearms counts, and his "much different mindset" at the time of his motion). Other factors considered by district courts that are not at play in this instance include a defendant's safety-value eligibility; disputes surrounding the obligations of the government in plea negotiations and agreements; and vacated convictions without opposition from the government. *See United States v. Kissi*, 469 F. Supp. 3d 21 (E.D.N.Y. 2020) (granting compassionate release, citing, *inter alia*, changes to the safety valve provisions, heightened vulnerability to COVID-19, the "undue length of [the defendant's] sentence despite his minimal role" and BOP's designation of the defendant as "particularly at-risk for health complications should [the defendant] contract COVID-19"); *see generally United States v. Marks*, 455 F. Supp. 3d 17 (W.D.N.Y. 2020).

While the Court is mindful of Viola's age, his purported medical exigencies are not bolstered by any new evidence outside of a May 28, 2020 BOP report indicating that Viola took an eye exam on that date and was

P-049

referred for a retinal evaluation. The Court has considered these reports, along with the BOP statements in denying Viola compassionate release. *See, supra*, at 4. The Court also notes that, unlike the defendants in *Brooker*, *Rose* or *Marks*, Viola was not a youth at the time of his offenses, nor were not momentary lapses in judgment. Importantly, Viola's sentence was driven by his racketeering convictions, not § 924(c) stacking. In short, even putting aside the uncertainty of the Court's power to undo a mandatory minimum sentence under these circumstances, Viola's case for compassionate release is simply less sympathetic.

This Court is not aware of a similarly situated defendant found eligible for compassionate release in this Circuit, nor of any decisions affirming the reduction of a sentenced imposed pursuant to a mandatory minimum. Thus, the Court declines to find "extraordinary and compelling circumstances" justifying compassionate release.

13

### III. Conclusion

For the foregoing reasons, Viola's motion to resentencing pursuant to Amendment 782 is GRANTED and his motion for compassionate release is DENIED. SO ORDERED.

Dated: October 6, 2021　　　　　　　　　　　/s
　　　Brooklyn, New York　　　　　　　Sterling Johnson, Jr., U.S.D.J.